## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| BENSON MILLS, INC., | |
| Plaintiff, | Court No.  1:25-cv-972 |
| v. | |
| UNITED STATES OF AMERICA; U.S. CUSTOMS AND BORDER PROTECTION; and RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection, | |
| Defendants. | |

## COMPLAINT

Plaintiff, by and through its undersigned attorneys, alleges as follows:

1.      Benson Mills, Inc. ("Plaintiff") is an importer who brings this Complaint to challenge the assessment of certain duties on its merchandise by Defendants.

2.      Beginning in February 2025, through a series of executive orders, President Trump invoked the International Emergency Economic Powers Act ("IEEPA") as authority to impose tariffs ("IEEPA Duties") on goods imported from nearly every foreign country, including countries from which Plaintiff sources its imports.

3.      This Court and the Federal Circuit have held that IEEPA does not authorize these tariffs.  *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir.), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

4.      The Supreme Court heard oral argument in *V.O.S. Selections* and a companion case arising out of the U.S. District Court for the District of Columbia[1] on November 5, 2025,

---

[1] *Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287,

33905/000/7058343

and is expected to rule in the near future.

5.      Through this action, Plaintiff asks the Court to hold that, with respect to goods imported by Plaintiff, (a) the IEEPA Duties imposed by Defendants and the underlying executive orders that directed them are unlawful; and (b) that the IEEPA Duties collected from Plaintiff must be refunded to Plaintiff. "[I]f the challenged Tariff Orders are unlawful as to Plaintiffs they are unlawful as to all." *V.O.S. Selections*, 772 F. Supp. 3d at 1383.

6.      This separate action is necessary because even if the IEEPA Duties and underlying executive orders are held unlawful by the Supreme Court, importers that have paid IEEPA Duties, including Plaintiff, are not guaranteed a refund for those unlawfully collected tariffs in the absence of their own order or judgment from this Court directing Defendants to refund IEEPA Duties paid by Plaintiff.

7.      Further, this action is necessary because it is uncertain whether Defendants will issue refunds on liquidated entries even if the Supreme Court affirms the holding of the Federal Circuit in *V.O.S. Selections*. Plaintiff seeks relief from the final or impending liquidations to ensure that its right to a complete refund is not jeopardized.

8.      Accordingly, for itself, Plaintiff seeks (1) a declaration that the IEEPA Duties are unlawful; and (2) a full refund, with interest as required by law, from Defendants of all IEEPA Duties Plaintiff has already paid to the United States, as well as any other IEEPA Duties it must continue to pay.

## PARTIES

9.      Plaintiff is an importer of various goods on which IEEPA Duties were paid. Plaintiff is a New York corporation.

---

2025 WL 2601021 (U.S. Sept. 9, 2025).

33905/000/7058343

10.     Defendant United States Customs and Border Protection ("CBP" or "Customs") is a federal agency that collects duties on goods imported into the United States.

11.     Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

12.     Defendant United States of America received the disputed IEEPA Duties and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

13.     Defendants are referred to collectively in this complaint as "Defendants," "CBP," or "Customs."

## JURISDICTION

14.     The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1581(i). *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1347–48 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

15.     The Court has the same powers at law, in equity, and as conferred by statute as a United States District Court.  28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

## STANDING

16.     Plaintiff has standing to bring this lawsuit, pursuant to 28 U.S.C. § 2631(i), because it is the importer of record of goods subject to the unlawful IEEPA Duties as implemented and collected by CBP, and is thereby "adversely affected or aggrieved by agency action." Plaintiff, as importer of record, has suffered injury by being required to pay the unlawful IEEPA Duties.  Declaratory and injunctive relief from this Court would redress those injuries.

33905/000/7058343

Plaintiff also faces irreparable harm because entries for which Plaintiff paid IEEPA Duties have liquidated and/or are anticipated to liquidate, and there is uncertainty whether Defendants will issue refunds of the IEEPA Duties unless this Court orders Defendants to do so.

17.    Plaintiff has commenced this action "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).  Plaintiff's action is therefore timely.

## GENERAL PLEADINGS

### I.    The IEEPA Duties

#### A.    Trafficking Tariffs

18.    Since taking office on January 20, 2025, the President has declared several national emergencies and imposed various tariffs in response. The President has subsequently issued a number of pauses and modifications to those tariffs, as outlined below.

19.    Beginning on February 1, 2025, President Trump issued a series of executive orders that claimed to address an influx of illegal migration, human trafficking, and illicit drugs across the U.S. border; these executive orders imposed tariffs on imports from Canada, Mexico, and China, and were premised on IEEPA authorizing the tariffs to address this declared national emergency (collectively, the "Trafficking Tariff Orders."[2]).

20.    President Trump subsequently modified the Trafficking Tariff Orders to impose additional tariffs.  *See* Exec. Order No. 14200, Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 9277 (Feb. 11, 2025); Exec. Order No. 14228, Further Amendment to Duties Addressing the Synthetic Opioid Supply

---

[2] Exec. Order No. 14194, Imposing Duties To Address the Situation at Our Southern Border, 90 Fed. Reg. 9,117 (Feb. 7, 2025); Exec. Order No. 14193, Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border, 90 Fed. Reg. 9,113 (Feb. 7, 2025); Exec. Order No. 14195, Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 9,121 (Feb. 7, 2025). The China Tariff Order imposed an additional 10% ad valorem tariff on products from China imported into the United States in addition to existing duties.

33905/000/7058343

Chain in the People's Republic of China, 90 Fed. Reg. 11,463 (Mar. 7, 2025).[3]

### B.    Worldwide and Reciprocal Tariffs

21.    On April 2, 2025, President Trump issued Executive Order 14257 ("Reciprocal Tariff Order"), invoking IEEPA to impose a general 10% *ad valorem* duty on all "imports from all trading partners."[4] The Reciprocal Tariff Order imposed these tariffs on 57 countries and were premised on a national emergency regarding trade deficits. *Id.* These tariffs range from 11% to 50%. *Id.*

22.    As with the Trafficking Tariff Orders, President Trump subsequently modified the Reciprocal Tariff Order.  *See* Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15509 (Apr. 14, 2025) (raising the reciprocal tariff rate on China from 34% to 84%); Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment* (Apr. 9, 2025) 90 Fed. Reg. 15625 (Apr. 15, 2025) (suspending for 90 days the higher country-specific tariffs on all countries except for China, which was again raised from 84% to 125%).

23.    The President's slew of executive orders directed changes to the Harmonized Tariff Schedule of the United States ("HTSUS")—the statute that sets tariff rates for all merchandise imported into the United States—requiring that goods subject to the challenged tariffs be entered under new tariff classifications.

24.    On April 14, 2025, several companies filed an action in this Court to challenge the legality of these tariff orders. *See V.O.S. Selections*, *et al. v. Donald J. Trump*, *et al.*, No. 25-cv-

---

[3] A complete list of amendments to executive orders can be found in the Court's decision in *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025).
[4] Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

33905/000/7058343

00066, Apr. 14, 2025, ECF No. 2. As explained below, this Court held the orders unlawful; the

Federal Circuit, sitting *en banc*, then affirmed.

25.     In the months after the *V.O.S. Selections* complaint was filed, President Trump,

invoking IEEPA, has issued additional executive orders imposing additional tariffs and

modifying others. By filing this complaint, however, Plaintiff challenges only those orders this

Court and the Federal Circuit have already held to be unlawful ("Challenged Tariff Orders") and

under which Plaintiff has paid duties.

### C.     CBP's implementation of the IEEPA Duties

26.     CBP is responsible for the assessment and collection of duties, including the

IEEPA Duties. *See* 19 U.S.C. §§ 1500, 1502.

27.     CBP classifies merchandise imported into the United States consistent with tariff

rates set by the HTSUS. *See* 19 U.S.C. § 1202; 19 C.F.R. § 152.11.

28.     Once CBP determines the final amount of duty, CBP "liquidates" the entry and

notifies the importer of record whether they owe more money or are entitled to a refund. *See* 19

U.S.C. § 1500.

29.     Once liquidation has occurred, an importer of record has 180 days to file a protest

contesting the liquidation. 19 U.S.C. § 1514(a).

30.     This Court and the Federal Circuit have cautioned that in certain circumstances an

importer may lack the legal right to recover refunds of duties for liquidated entries, even when a

tariff is later found to be unlawful. *See In re Section 301 Cases*, 524 F. Supp. 3d at 1365–66;

*Target Corp. v. United States*, 134 F.4th 1307, 1316 (Fed. Cir. 2025).  Therefore, this Court held

that "liquidation will result in irreparable economic harm." *In re Section 301 Cases*, 524 F.

Supp. 3d 1355, 1366 (Ct. Int'l Trade 2021).

31.     This Court possesses the equitable authority to suspend liquidation. *See, e.g., In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365–66 (Ct. Int'l Trade 2021).

## II.    IEEPA does not authorize the challenged tariffs

32.     The Challenged Tariff Orders cite IEEPA, 50 U.S.C. § 1701 *et seq.*, the National Emergencies Act, 50 U.S.C. § 1601 *et seq.*, section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 for authority to impose tariffs.

33.     None of these statutes authorizes the President to impose tariffs. Defendants have relied solely on IEEPA to impose and collect the IEEPA Duties, which, again, does not authorize the sweeping changes to the tariff schedule that the Challenged Tariff Orders seek to impose.

34.     Moreover, the U.S. Constitution does not provide the President the power to lay and collect tariffs.  Instead, "*Congress* shall have Power To lay and collect Taxes, Duties, Imposts and Excises . . . ." (U.S. Const. Art. I, § 8, cl. 1) (emphasis added) and "[t]o regulate Commerce with foreign Nations." *Id.*, cl. 3.

35.     As this Court is aware, on May 28, 2025, a three-judge panel granted summary judgment to the plaintiffs in *V.O.S. Selections*, permanently enjoining the government from enforcing the IEEPA Duties. *See V.O.S. Selections, Inc. v. Donald J. Trump*, 772 F. Supp. 3d. 1350 (Ct. Int'l Trade 2025). That decision was appealed to the Court of Appeals for the Federal Circuit.

36.     The Federal Circuit stayed this Court's decision and injunction and ordered an expedited briefing schedule and hearing.

37.     Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA Duties are unlawful. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S.

33905/000/7058343

Sept. 9, 2025).

38.     In another lawsuit filed by a separate group of importers, the U.S. District Court

for the District of Columbia held that IEEPA does not authorize any tariffs at all. *See Learning*

*Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-

1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That decision was appealed to the Court of

Appeals for the D.C. Circuit.  However, before the D.C. Circuit held argument, the Supreme

Court of the United States granted certiorari in both *V.O.S. Selections* and *Learning Resources*.

39.     The cases were consolidated, and the Supreme Court held argument on November

5, 2025.

## III.     Plaintiff paid IEEPA Duties

40.     As of the date of this complaint, Plaintiff has paid IEEPA Duties imposed by the

Challenged Tariff Orders.

41.     Plaintiff's imports subject to IEEPA Duties entered the United States under new

HTSUS codes.

**STATEMENT OF CLAIMS**

**COUNT I**

**THE CHALLENGED TARIFF ORDERS ARE UNLAWFUL UNDER *V.O.S.*
*SELECTIONS***

42.     Plaintiff incorporates paragraphs 1–41 above by reference.

43.     The Court of International Trade in *V.O.S. Selections, Inc. v. Donald J. Trump*,

772 F. Supp. 3d. 1350, 1370, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025),

held that the President exceeded his authority under the International Emergency Economic

Powers Act ("IEEPA"), 50 U.S.C. § 1701 et seq., when he imposed "unbounded tariffs."

44.     As explained in *V.O.S. Selections*, IEEPA authorizes the President to "regulate . . .

8

importation" within certain limitations; it does not, however, authorize the imposition of such

expansive duties on imports such as at those issue here. Neither the text of IEEPA nor its

legislative history contains any such broad delegation to the President to set tariff rates

unilaterally.

45.     The Federal Circuit affirmed, holding that Congress did not empower the

President to impose tariffs under IEEPA and that reading IEEPA to permit such authority would

raise serious constitutional concerns, including under the major questions and non-delegation

doctrines.

46.     The Challenged Tariff Orders are the same as those struck down in *V.O.S.*

*Selections*. For the same reasons set forth in *V.O.S. Selections* and its affirmance by the Federal

Circuit, the Challenged Tariff Orders exceed the President's authority under IEEPA and are

therefore unlawful, void *ab initio,* and without effect as applied to Plaintiff.

47.     Plaintiff respectfully requests that—pursuant to this Court's prior precedent as

well as the binding decision of the Federal Circuit—this Court declare the Challenged Tariff

Orders unlawful as to Plaintiff, enjoin Defendants from enforcing them as to Plaintiff, and order

a refund of all IEEPA Duties collected from Plaintiff, with interest as provided by law.

## COUNT II

### IN THE ALTERNATIVE,  THE  CHALLENGED  ORDERS  ARE UNCONSTITUTIONAL

48.     Plaintiff incorporates paragraphs 1–47 above by reference.

49.     In the alternative, if the Court were to interpret IEEPA as authorizing tariffs, the

IEEPA Tariff Orders must still be held unlawful as an impermissible, unconstitutional delegation

of legislative power to the executive branch.

50.     The United States Constitution vests in Congress exclusively the power to "lay

33905/000/7058343

and collect … Duties." U.S. Const. Art. I, § 8, cl. 1.

51.    Under binding precedent of the U.S. Supreme Court and separation-of-powers principles, Congress cannot delegate its power to the President unless, at the very least, it provides an intelligible principle that directs and meaningfully constrains the President's exercise of that power. IEEPA does not satisfy that requirement.

52.    Further, under the major questions doctrine, Congress must speak clearly when assigning to the executive branch decisions of vast economic and political significance—such as the power to rewrite the tariff schedule—and IEEPA contains no such clear statement.

53.    Plaintiff therefore requests in the alternative that the Court (1) declare that the IEEPA Tariff Orders are unconstitutional as to Plaintiff; (2) enjoin Defendants from enforcing them as to Plaintiff; and, (3) order a refund of all IEEPA Duties collected from Plaintiff, with interest as provided by law.

## COUNT III

## DECLARATORY RELIEF, 28 U.S.C. § 2201

54.    Plaintiff incorporates paragraphs 1–53 above by reference.

55.    Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

56.    Plaintiff's claims present an actual controversy as to the President's authority under IEEPA, the constitutionality of IEEPA, and the authority of CBP to implement and collect the resulting tariffs.

57.    Plaintiff is an importer of record and has suffered injury by having been required to pay IEEPA Duties on goods it has imported into the United States as a result of the Challenged Tariff Orders.

33905/000/7058343

58.     This Court can exercise its equitable power to enter a declaratory judgment that the Challenged Tariff Orders are unlawful for any of the above reasons, and that CBP lacks authority to implement and collect the resulting tariffs, as to Plaintiff.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

a)      declare that the President lacks authority to impose tariffs under IEEPA;

b)      declare that, with respect to Plaintiff, the Challenged Tariff Orders are *ultra vires* and void *ab initio*;

c)      declare that, with respect to Plaintiff, CBP lacks authority to implement and collect any tariffs set out in the HTSUS that are based on the Challenged Tariff Orders;

d)      with respect to Plaintiff, enjoin Defendants from imposing and enforcing any tariffs set out in the HTSUS that are based on the Challenged Tariff Orders;

e)      order the United States to refund to Plaintiff the IEEPA Duties collected on those entries, with interest as provided by law;

f)      award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

g)      grant such other and further relief as this Court deems proper.

Dated:  December 24, 2025                          COWAN, LIEBOWITZ & LATMAN, P.C.
                                                  *Attorneys for Plaintiff*

                                                  By: /s/ Clarence J. Erickson
                                                  Clarence J. Erickson
                                                  114 West 47th Street
                                                  New York, New York 10036
                                                  (212) 790-9200
                                                  cje@cll.com

33905/000/7058343